IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 5:07-CV-395-FL

| | | |
|---|---|---|
| DALE VIVERETTE, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross-motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (DE ## 10 & 12) and plaintiff's timely objection to the memorandum and recommendations ("M&R") entered by the magistrate judge. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court the court affirms defendant's decision denying plaintiff benefits.

## STATEMENT OF THE CASE

Plaintiff applied for a period of disability and disability insurance benefits ("DIB") on November 17, 2004. Plaintiff alleged disability stemming from vertigo and weakness beginning on November 27, 2002. Additionally, plaintiff suffers from type 2 diabetes mellitus and hypertension. Plaintiff's claim was denied initially and upon reconsideration.

An administrative law judge ("ALJ") held a hearing regarding plaintiff's claim on March 21, 2007. Thereafter, the ALJ issued a decision finding plaintiff not disabled and denying benefits. This claim was defendant's final decision after the Appeals Council denied review.

Plaintiff timely filed the instant action seeking judicial review of defendant's decision. Both parties moved for judgment on the pleadings and the motions were referred to a magistrate judge. The magistrate judge entered an M&R to which the plaintiff timely objected. The time for response by defendant has passed and the issues are now ripe.

## DISCUSSION

### A. Standard of Review

This court's role in reviewing the final decision of the Commissioner is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. See Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). It must be "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. In addressing a plaintiff's objection to an M&R, the district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; see Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

### B. Analysis

Plaintiff raises three objections to the findings of the M&R. First, plaintiff argues the record does not support the magistrate judge's conclusion that the ALJ properly evaluated the medical evidence in the case. As part of this argument, plaintiff renews his contention that the ALJ

2

improperly "played doctor" in his review of plaintiff's medical records. Second, plaintiff argues that the ALJ had a duty to contact plaintiff's treating physician or to seek assistance from plaintiff's counsel in developing the medical record before denying plaintiff's claim. Finally, plaintiff renews his argument that the ALJ improperly penalized plaintiff for his inability to afford medical treatment.

Plaintiff's first objection to the M&R is a renewal of his contention that, by noting that plaintiff received "routine and/or conservative" treatment, the ALJ "played doctor" and drew an improper inference that plaintiff's conditions could not be disabling. Plaintiff relies on two cases in developing this argument: Shaw v. Chater, 221 F.3d 126 (2d Cir. 2000); and Schmidt v. Sullivan, 914 F.2d 117 (7th Cir. 1990). Though both cases do stand for the proposition that ALJs may not substitute their lay opinions for those of a valid medical opinion, neither case is apposite here.

Shaw dealt with a situation in which the ALJ failed to give weight to a treating physician's opinion in determining that the claimant's impairment did not equal a listed impairment (i.e. at step three of the sequential evaluation). Opinions of treating physicians generally receive great deference with regard to medical determinations. 20 C.F.R. 404.1527(d)(2); see also Christian v. Apfel, 1998 U.S. App. LEXIS 32684, *8 (4th Cir. Dec. 31, 1998). That is not the case here. At the third step of the sequential evaluation, the ALJ in this case only referenced objective medical evidence in reaching his determination that plaintiff's conditions did not equal any listed impairment. (R. at 18-19.) Instead, the ALJ here described the nature of the plaintiff's treatment as "routine and/or conservative" during his assessment of plaintiff's residual functional capacity ("RFC"). (R. at 21.) Determinations regarding a claimant's RFC and application of vocational factors are reserved to the defendant. 20 C.F.R. 404.1527(e)(2); see also Craft v. Apfel, 164 F.3d 624 (Table), 1998 WL 702296, at *7 (4th Cir. Oct. 6, 1998). The ALJ is not required to "give any special significance to

3

the source of an opinion on issues reserved to the" defendant. 20 C.F.R. 404.1527(e)(3); see also SSR No. 96-5p, 1996 SSR LEXIS 2, 61 FR 34471 (1996) (emphasizing that treating physician opinions on issues reserved to the Commissioner are never entitled to controlling weight but that opinions from any medical source about such issues must never be ignored). While the ALJ needs to consider all medical opinions, including those of treating physicians, in determining the RFC, no such opinions receive any special weight or control the ALJ's determination. Here, the ALJ did consider plaintiff's treating physician's opinion in determining plaintiff's RFC. (R. at 20-21 (discussing plaintiff's treatment for diabetes by Dr. Liverman).)

Further, the ALJ did not make an improper inference when he noted that the plaintiff's medical treatment was "essentially routine and/or conservative in nature." (R. at 21.) The ALJ did not substitute his lay opinion for that of a medical expert in determining the plaintiff's medical conditions. Instead, the ALJ noted this rather unremarkable fact as part of his credibility and RFC analysis. Many potentially disabling conditions can be treated by routine and conservative treatment. This characterization alone does not provide any insight into the severity of a given condition and may even belie the condition's seriousness. However, when considered with other information, the routine nature of a course of treatment may indicate that a condition is not as severe as a plaintiff's subjective complaints may otherwise indicate. See Tommasetti v. Astrue, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (citing Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir. 2007)) (noting it is permissible to infer that self-reported pain was not as substantial as reported based on favorable response to conservative treatment). Here, the ALJ considered the nature of plaintiff's treatment together with the details of several medical evaluations and plaintiff's lack of follow-through regarding monitoring his diabetes and lack of compliance with taking his diabetes medication. (R. at 20-21.) Further, the

4

ALJ considered the findings of the state agency residual functional capacity assessment and found those findings persuasive. (R. at 21.) Such an evaluation in determining a plaintiff's credibility and RFC does not constitute "playing doctor."

Similarly, the Schmidt decision does not advance plaintiff's cause. That case involved an ALJ who apparently relied on his lay opinion that a claimant who played weekly handball games could not have a disabling heart condition. The Seventh Circuit admonished that judges should not substitute their lay opinions for those of medical experts because "lay intuitions about medical phenomena are often wrong." Schmidt, 914 F.2d at 118. However, the court there found that the ALJ's fixation with the claimant's ability to play handball did not ultimately warrant reversal because the ALJ did not find that the claimant could perform his previous position. Id. at 119. Instead, the ALJ relied on vocational testimony to find that the claimant could perform other jobs in the economy. Id. As such, the ALJ's finding that the claimant was not disabled within the meaning of the Social Security Act was affirmed. Id.

Such is the case here. The ALJ specifically found that plaintiff was unable to perform his past relevant work. (R. at 21.) However, after considering the testimony of a vocational expert ("VE"), the ALJ found that there were other jobs that someone with plaintiff's RFC could perform in significant numbers in the national economy. (R. at 22.) These jobs included "medium, unskilled jobs such as a hospital cleaner, a day worker, and certain food service jobs such as a kitchen helper." (R. at 21.) These may not be the types of jobs that plaintiff would prefer to perform, but that is beside the point for purposes of determining disability under the Social Security Act. "The job need only exist; it need not be a job that the applicant would find attractive." Schmidt, 914 F.2d at 119.

In his second objection, plaintiff contends that the ALJ failed to fulfill his duty to develop

5

the record fully by not seeking to contact plaintiff's treating physician or asking plaintiff's counsel to do so regarding potential omissions in the medical record. Plaintiff bases his objection here on the ALJ's observation that "one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor" based on the disabling symptoms alleged by plaintiff. (R. at 21.) Because of this observation, plaintiff contends, the ALJ should have sought out the treating physician in an effort to fill in the blanks allegedly left on plaintiff's medical records.

Plaintiffs objection on this point is without merit. With regard to whether an ALJ has properly developed the medical record, "[t]he pertinent inquiry is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision as to [plaintiff's] alleged . . . impairment.'" Craft, 164 F.3d 624 (Table), 1998 WL 702296, at *3 (quoting Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989)). As noted by the magistrate judge, there is nothing to suggest that there are medical records missing in this case or that the medical records included in the record are in some way incomplete. The record in this case contains numerous records for plaintiff's visits to his treating doctor, as well as other assessments by other doctors. Even though these records are generally silent as to activity restrictions, they do include, as the plaintiff points out, notations from plaintiff's treating physician that he should continue "[a]ctivity as tolerated." (R. at 96, 98.) These notations undermine plaintiff's contention that the ALJ needed to seek further information regarding activity restrictions because they indicate that Dr. Liverman did make notations regarding plaintiff's recommended activity levels as he deemed necessary. Simply because he did not make such notations on every chart is not reason to require the ALJ to seek out additional information regarding the activity restrictions placed on plaintiff after every visit he made to Dr. Liverman.

Further, as plaintiff points out, not all doctors routinely include activity restrictions in their

6

notes. But this does not mean that the ALJ has an affirmative duty to inquire as to activity restrictions from every doctor who failed to include such restrictions in his case notes. The ALJ does have a duty to assist plaintiff in developing his medical record because of the non-adversarial nature of disability hearings. See Newton v. Apfel, 209 F.3d 448, 457-58 (5th Cir. 2000). However, that duty does not require the ALJ to make additional inquiries every time a medical report fails to indicate activity restrictions. See Craft, 164 F.3d 624 (Table), 1998 WL 702296, at *3 ("While the ALJ must make a reasonable inquiry into a claim of disability, he has no duty to 'go to inordinate lengths to develop a claimant's case.'" (quoting Thompson v. Califano, 556 F.2d 616, 618 (1st Cir. 1977)). The ALJ must develop the record to the point it "contain[s] sufficient medical evidence for the ALJ to make an informed decision as to [plaintiff's] alleged . . . impairment." There is ample medical evidence in the record in this case for the ALJ to make an informed decision as to plaintiff's impairments. Therefore, the ALJ satisfied his duty to develop the record.

Second, even assuming *arguendo* that there are medical records missing or which are incomplete, plaintiff has failed to allege or demonstrate that inclusion of the records would change the outcome of the case. To warrant reversal, a plaintiff who alleges that there are gaps in the administrative record to show prejudice from an ALJ's failure to request additional information to fill in such gaps in order to warrant reversal. See Camp v. Massanari, 22 Fed. Appx. 311 (4th Cir. 2001) (unpublished opinion) (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000) (requiring that an applicant show prejudice from an ALJ's failure to request additional information to justify reversal)). Plaintiff has made no such allegation or showing. Instead, plaintiff merely lists a litany of potential reasons why Dr. Liverman may have failed to include activity restrictions. Plaintiff has not shown that the medical record before the ALJ was incomplete and that, therefore, he was

7

prejudiced because the ALJ did not seek out additional evidence from Dr. Liverman regarding activity restrictions. As a result, plaintiff's argument on this would point fail even if it were the case that the ALJ should have sought additional medical records.

Plaintiff's final objection to the M&R is that the ALJ improperly penalized plaintiff for his inability to afford medical treatment. It is true that the ALJ cannot penalize a claimant for not procuring medical care that he cannot afford. See Lovejoy v. Heckler, 790 F.2d 1114 (4th Cir. 1986); Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984) ("It flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him."). However, it is not true that simply because an ALJ notes that a claimant has received infrequent medical treatment the ALJ is penalizing the claimant for his inability to pay for medical care.

There are at least two inferences that can be drawn from a plaintiff's failure to frequently seek medical attention. One is the improper inference, which the Fourth Circuit has warned against, that the plaintiff failed to procure more medical attention because he was poor. The other inference is that, based on the plaintiff's medical records, the plaintiff did not seek additional medical attention because the course of treatment prescribed to him successfully controlled his conditions. See Wooten v. Shalala, 1993 U.S. App. LEXIS 18071, *10-11 (4th Cir. July 16, 1993).

The record in this case indicates that the latter of these inferences was drawn by the ALJ. Plaintiff has routinely purchased and taken his prescriptions for his diabetes medications. (R. at 187-92.) Plaintiff has also frequently taken the prescribed medication for his vertigo on an as-needed basis. (Id.) None of plaintiff's medical records indicate that plaintiff was ever unable to afford his prescription drugs. Further, the record indicates that plaintiff generally received effective treatment

8

that obviated the need for more frequent visits to a physician. At several instances, plaintiff's medical records indicate that his conditions were being effectively controlled by the prescribed course of treatment and that no change in such treatment was warranted. (See R. at 96-100.) The record also indicates that at least one of the plaintiff's visits to the doctor was necessitated by plaintiff's failure to follow medical directions.[1] (See R. at 98 (treating physician advising plaintiff to resume taking prescribed medications and to follow a proper diet).) Nowhere in the record is there any indication that the treatments prescribed by plaintiff's physicians were ineffective in treating plaintiff's conditions. As such, it was not improper for the ALJ to note the infrequency of plaintiff's visits to physicians in making his determination of the plaintiff's credibility.

## CONCLUSION

Based on the foregoing reasons, the plaintiff's objections to the M&R are OVERRULED. Following a thorough review of the record in this case, this court finds there is substantial evidence to support the ALJ's finding that plaintiff is not disabled for purposes of the Social Security Act. Defendant's motion for judgment on the pleadings is therefore GRANTED and plaintiff's motion for judgment on the pleadings is DENIED.

SO ORDERED, this the 24th day of November, 2008.

LOUISE W. FLANAGAN
Chief United States District Judge

---

[1] Plaintiff initially asserted that his failure to follow prescribed treatment and his infrequent trips to the doctor stemmed from his financial situation. (Pl. Mem. Supp. J. on the Pleadings at 4.) In later filings, plaintiff then denied that his failure to follow his prescribed treatment was that the result of his financial situation and that, indeed, he could afford his medications. (Pl. Objections to Mem. and Recommendations of Magistrate Judge at 3.) Regardless of these inconsistent assertions by plaintiff, the outcome remains the same: the ALJ did not penalize plaintiff for being unable to afford physician's visits. He made a permissible inference that the course of treatment prescribed to plaintiff by his doctors was sufficiently controlling his conditions so as to obviate the need for more frequent visits.